IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

GARY W. GREENWOOD,

Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant.

No. C10-1029

RULING ON JUDICIAL REVIEW

_____

## TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.  PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.  Greenwood's Education and Employment Background . . . . . . . . . . 5
    B.  Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . 5
        1.  Greenwood's Testimony . . . . . . . . . . . . . . . . . . . . . 5
        2.  Vocational Expert Testimony . . . . . . . . . . . . . . . . . . 6
    C.  Greenwood's Medical History . . . . . . . . . . . . . . . . . . . . . . 7

V.  CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    A.  ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . 12
    B.  Objections Raised by Claimant . . . . . . . . . . . . . . . . . . . . . 14
        1.  Fully and Fairly Developed the Record . . . . . . . . . . . . . 14
        2.  Credibility Determination . . . . . . . . . . . . . . . . . . . . 17
    C.  Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VII.  ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Gary W. Greenwood on November 18, 2010, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Greenwood asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Greenwood requests the Court to remand this matter for further proceedings.

# II. PROCEDURAL BACKGROUND

On November 26, 2007, Greenwood applied for both disability insurance benefits and SSI benefits. In his applications, Greenwood alleged an inability to work since October 3, 2003 due to bursitis, asthma, bone deterioration in the shoulder with pain, tendinitis in the hands, rotator cuff problems, left arm numbness, arm and neck pain, difficulty concentrating, and difficulty breathing due to allergies and asthma. Greenwood's applications were denied on January 22, 2008. On April 3, 2008, his applications were denied on reconsideration. On April 29, 2008, Greenwood requested an administrative hearing before an Administrative Law Judge ("ALJ"). On May 19, 2009, Greenwood appeared via video conference with his attorney before ALJ John E. Sandbothe for an administrative hearing. Greenwood and vocational expert Carma A. Mitchell testified at the hearing. In a decision dated July 10, 2009, the ALJ denied Greenwood's claims. The ALJ determined that Greenwood was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing other work that exists in significant numbers in the national economy. Greenwood appealed the ALJ's decision. On September 22, 2010, the Appeals Council denied Greenwood's request for review. Consequently, the ALJ's July 10, 2009 decision was adopted as the Commissioner's final decision.

On November 18, 2010, Greenwood filed this action for judicial review. The Commissioner filed an Answer on February 28, 2011. On March 31, 2011, Greenwood filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he could perform other work that exists in significant numbers in the national economy. On May 19, 2011, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On January 13, 2011, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id.* (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to

4

support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Greenwood's Education and Employment Background

Greenwood was born in 1963. He completed the eighth grade. Greenwood testified that he had to take special education classes throughout his schooling because he had difficulty paying attention in class. At the time of the administrative hearing, he testified that he had no difficulty reading, writing, performing math, or understanding.

The record contains a detailed earnings report for Greenwood. The report covers Greenwood's employment history from 1980 to 2009. Greenwood had minimal earnings in 1980. Between 1981 and 1984, he earned between $874.36 (1984) and $8,319.15 (1981). He had no earnings in 1985. Between 1986 and 2007, Greenwood earned between $179.95 (1986) and $13,090.99 (1991). He has no earning since 2008.

### B. Administrative Hearing Testimony

#### 1. Greenwood's Testimony

At the administrative hearing, Greenwood's attorney asked Greenwood what prevents him from working. Greenwood responded that pain in his left shoulder and hand make it difficult for him to work. Greenwood rated his left shoulder pain as 6 or 7, on a scale of 1 to 10, at all times. Greenwood described the pain as "like lightening [*sic*] shooting through my arm all the day down to my hand."[1] Greenwood also testified that due to his left shoulder and hand problems, "I have a hard time keeping a hold of things all the time. It feels like it weighs more than what it does. The shoulder feels wore out all the time."[2] He also indicated that his constant pain makes thinking and concentrating

---

[1] *See* Administrative Record at 62.

[2] *Id.*

difficult. Greenwood stated that he treats the pain with aspirin and hot and cold treatments.

The ALJ also questioned Greenwood regarding his functional abilities:

> Q: Mr. Greenwood, what can you do with your left hand? And you are left-hand dominant, correct?
> A: Yes, I am.
> Q: So what can you do with your left hand?
> A: I can write, I could do little things, not, not too much. I can't do anything for a long period of time.
> Q: If you were to write, how long could you write before you would get shoulder pain?
> A: I would say 45 minutes.
> Q: And then what would happen?
> A: I'd get shooting pains and cramping in my left hand, and arm and shoulder pain bothers me. . . .
> Q: Well, how long would you have to stop before you could write another 45 minutes?
> A: I would say about the same length of time every time.
> Q: So you could write perhaps a half an hour with no pain?
> A: I have a little pain, but I get really bad pain the more I do things, the more it starts hurting.
> Q: So you wouldn't be able to use your left hand for anything really for more than half the day?
> A: That's correct.
> Q: How about things like lifting?
> A: It really bothers me to lift anything over a couple of pounds for a long period of time. It just feels like it weighs ten times more that what it is.
> Q: So almost no lifting with your dominant hand at all?
> A: That's correct.

(Administrative Record at 68-69.)

### 2. *Vocational Expert Testimony*

At the hearing, the ALJ provided vocational expert Carma Mitchell with a hypothetical for an individual who could:

> lift 20 pounds occasionally, 10 pounds frequently. He could only occasionally balance, stoop, crouch, kneel, crawl or climb. No overhead reaching or gross manipulation with the

> . . . left hand, and no repetitive fine manipulation with the left
> hand, and that is his dominant hand. Also no extremes of
> heat, cold, humidity, dust or fumes, and no hazards.

(Administrative Record at 72.) The ALJ ruled out Greenwood's past relevant work, and inquired whether there were other jobs available to Greenwood. The vocational expert testified that Greenwood could perform the following work: (1) usher (240 positions in Iowa and 35,000 positions in the nation), (2) surveillance system monitor (200 positions in Iowa and 33,000 positions in the nation), conveyor tender worker (237 positions in Iowa and 10,000 positions in the nation). The ALJ asked a second hypothetical which was identical to the first hypothetical except that the individual would require two unscheduled breaks per day and would have to work at a slow pace for up to one-third of the day. The vocational expert testified that under such circumstances, the individual would be precluded from competitive employment.

## C. Greenwood's Medical History

On December 9, 2004, Greenwood met with Dr. Brian Wolf regarding left shoulder pain. Dr. Wolf noted that 15 years prior to his appointment, Greenwood had rotator cuff surgery. Approximately two months before visiting Dr. Wolf, Greenwood started experiencing pain in his left shoulder. Upon examination, Dr. Wolf opined that Greenwood had a history of rotator cuff repair and bone grafting which "has appeared to have failed causing significant left shoulder pain."[3] On January 14, 2005, Greenwood returned to Dr. Wolf for a CT scan of his left shoulder. Upon reviewing the CT scan and further examination, Dr. Wolf found that Greenwood suffered from "left shoulder pain and subluxation, 15 years status post left rotator cuff repair with bone graft, now with hardware complications."[4] Dr. Wolf recommended surgery to correct Greenwood's difficulty with pain. On January 18, 2005, Greenwood underwent surgery. Dr. Wolf

---

[3] *See* Administrative Record at 350.

[4] *Id.* at 461.

performed arthroscopic Bankart repair, capsular plication, and microfracture of the humeral head.

On March 23, 2005, Greenwood met with Dr. Patricia Dandache, M.D., for a follow-up appointment regarding his shoulder surgery. Dr. Dandache noted that "[Greenwood] has regained most of his range of motion, and the shoulder pain is really insignificant at this point. He has stopped all his pain medications. [He] is very satisfied with the results of the surgery."[5] At another follow-up appointment with Dr. Wolf, on April 14, 2005, Greenwood reported an increase in pain radiating from his left collar bone, down the arm, to his elbow. He rated the pain as 5 out of 10. Dr. Wolf noted that Greenwood continued to be "pleased with his surgical outcome," but was "quite disappointed in the return of pain."[6] Dr. Wolf recommended physical therapy exercises as treatment for his shoulder pain.

In May 2005, Greenwood saw Dr. Wolf on an emergent basis, complaining of "severe" pain in his left shoulder. Dr. Wolf noted that Greenwood's pain "has been exacerbated over the week while he is working. . . . He does a lot of work with his left arm out in front of him. . . . He complains of pain over the scapula as well as over the superior aspect of the shoulder, as well as anteriorly. He was unable to sleep last night."[7] Upon examination, Dr. Wolf found that:

> the left shoulder reveals significant pain diffusely around the shoulder. [Greenwood] has tenderness along the subacromial bursa laterally. He complains of pain and tenderness up along the supraspinatus fossa. Tenderness and pain along the anterior joint capsule and along the coracoid. He is very painful with just gentle movement of the shoulder. . . . He has normal neurologic function. Skin looks normal. There is no redness.

---

[5] *Id.* at 323.

[6] *See* Administrative Record at 319.

[7] *Id.* at 477.

(Administrative Record at 477-78.) Dr. Wolf diagnosed Greenwood with rotator cuff tendinitis. Dr. Wolf treated Greenwood with a subacromial injection to relieve the pain.

On January 13, 2006, Greenwood met with Dr. Wolf, again, complaining of left shoulder pain. Dr. Wolf noted that:

> Since his last visit [Greenwood] states things were going better until he tried to return to work and worked the month of December doing insulation of asphalt tanks. This required lots of heavy lifting and he developed significant anterolateral shoulder pain that occasionally would radiate down the triceps. He states initially his pain was all right if he was not working. However he is no longer working for the last week, and he has not had any improvement in his discomfort. He does [physical therapy] exercises on a home program every morning and maxing out on Ibuprofen doses, none of which have offered relief.

(Administrative Record at 310.) Upon examination, Dr. Wolf diagnosed Greenwood with shoulder pain. Dr. Wolf treated Greenwood with another subacromial injection to relieve the pain.

On February 1, 2006, Greenwood underwent arthroscopic surgery on his left shoulder. Dr. Wolf performed left shoulder subacromial decompression and acromioplasty to treat rotator cuff tendinitis. On February 10, 2006, at a follow-up appointment with Jessica Fisher, P.A.-C, Greenwood reported that his pain had "significantly" improved compared to his pre-operative status. Fisher noted that Greenwood's "motion is much improved. His elbow pain as well as his neck pain are both steadily resolving. He continues to have mild aching discomfort in the anterior aspect of the shoulder. He is extremely happy with this progress today."[8] By June 2006, Greenwood's shoulder pain had returned. Dr. Wolf noted that Greenwood "is to the point now where he is just really

---

[8] *See* Administrative Record at 500.

concerned about his pain and feels that this might keep him from working."[9] Upon examination, Dr. Wolf diagnosed Greenwood with recurrent subacromial bursitis. Dr. Wolf recommended medication as treatment.

On March 23, 2007, Greenwood met with Dr. Wolf, complaining of "significant" pain in his left shoulder that was making it difficult for him to "continue working." Upon examination, Dr. Wolf diagnosed Greenwood with chronic left shoulder pain, status post 3 operations with recurrence of pain. Dr. Wolf recommended medication as treatment. Dr. Wolf also arranged for Greenwood to be evaluated by another doctor for a second opinion.

On May 15, 2007, Greenwood met with Dr. James V. Nepola, M.D., for a second opinion regarding his left shoulder pain. Dr. Nepola noted that Greenwood:

> states that over the past weeks he has continued to have shoulder pain. This increases steadily as the day progresses and he is essentially not pain free at any time. He states that his pain is also problematic for him at night. He works as a laborer and states he has significant problems completing his job duties without pain.

(Administrative Record at 285.) Upon examination, Dr. Nepola diagnosed Greenwood with a "history of ongoing shoulder pain now with what appears to be signs and symptoms of early degenerative changes."[10] Dr. Nepola treated Greenwood with an injection of Synvisc. On October 2, 2007, Greenwood again visited Dr. Nepola regarding his left shoulder problem. Dr. Nepola noted that between May and October, Greenwood had multiple Synvisc injections. Greenwood reported that the injections only helped for "about one week." Upon examination, Dr. Nepola diagnosed Greenwood with chronic pain and left glenohumeral arthritis. Dr. Nepola recommended medication as treatment.

---

[9] *Id.* at 503-504.

[10] *See* Administrative Record at 286.

On January 16, 2008, Dr. Gary Cromer, M.D., reviewed Greenwood's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Greenwood. Dr. Cromer determined that Greenwood could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Cromer also determined that Greenwood could frequently climb stairs and ramps, balance, stoop, kneel, and crouch, and occasionally crawl and climb ladders, ropes, and scaffolds. Dr. Cromer further found that Greenwood was limited in his ability to reach above the shoulder with his left upper extremity. Lastly, Dr. Cromer determined that Greenwood should avoid concentrated exposure to extreme heat and fumes, odors, dusts, and gases. Dr. Cromer found no visual or communicative limitations.

On March 25, 2008, Dr. C. David Smith, M.D., reviewed Greenwood's medical records and provided DDS with a physical RFC assessment for Greenwood. Dr. Smith determined that Greenwood could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull with upper extremity limitations. Dr. Smith also determined that Greenwood could frequently climb stairs and ramps, balance, stoop, kneel, and crouch; occasionally crawl; and never climb ladders, ropes, or scaffolds. Dr. Smith further found that "[o]verhead reach with left arm could only rarely be performed and then with the help of his right arm. Reach in other planes could be done occasionally with the left arm but not frequently. The right arm is not restricted nor is handling, fingering, or feeling with either arm."[11] Lastly, Dr. Smith determined that Greenwood should avoid concentrated exposure to extreme heat and

---

[11] *See* Administrative Record at 401.

fumes, odors, dusts, and gases, and avoid even moderate exposure to hazards such as machinery and heights. Dr. Smith found no visual or communicative limitations.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Greenwood is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id*. In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform

a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Greenwood had not engaged in substantial gainful activity since October 3, 2003. At the second step, the ALJ concluded from the medical evidence that Greenwood had the following severe combination of impairments: mild left shoulder arthritis, status-post multiple surgical interventions and asthma. At the third step, the ALJ found that Greenwood did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Greenwood's RFC as follows:

> [Greenwood] has the residual functional capacity to perform light work . . . such that he could lift 20 [pounds] occasionally and 10 pounds frequently as well as occasionally balance, stoop, kneel, crouch, crawl or climb. He would be limited with the left dominant hand to no overhead reaching, no gross manipulation and no repetitive fine manipulation. In addition, he would have to avoid concentrated exposures to extreme heat or cold, humidity, dust or fumes and no exposure to hazards.

(Administrative Record at 15.) Also at the fourth step, the ALJ determined that Greenwood could not perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Greenwood could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Greenwood was not disabled.

## B. Objections Raised by Claimant

Greenwood argues that the ALJ erred in two respects. First, Greenwood argues that the ALJ failed to fully and fairly develop the record with regard to his RFC, by failing to obtain a consultative evaluation. Second, Greenwood argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability.

### 1. Fully and Fairly Developed the Record

Greenwood argues that the ALJ failed to fully and fairly develop the record with regard to his RFC. Specifically, Greenwood maintains that the ALJ erred by failing to obtain a consultative evaluation. Greenwood points out that none of his treating examiners provided a statement of limitations or discussed any of his functional capabilities for employment in their treatment notes. Therefore, Greenwood asserts that a consultative examination should have been ordered for him. Thus, Greenwood requests that this matter be reversed and remanded for a consultative evaluation, including record review and statement of work-related limitations.

An ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)). Specifically, "the ALJ's determination must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003); *see also Krogmeier v. Barnhart*, 249 F.3d 1019, 1023 (8th Cir. 2002) (in

determining a claimant's RFC the ALJ is required to obtain medical evidence addressing the claimant's ability to function in the workplace).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)).

Furthermore, an ALJ is not required to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citation omitted). An ALJ should only contact a treating physician "if the doctor's records are 'inadequate for us to determine whether the claimant is disabled' such as 'when the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.'" *Goff*, 421 F.3d at 791 (citing 20 C.F.R. §§ 404.1512(e) and 416.912(e)). Additionally, an ALJ may order medical examinations and tests when the medical records presented to him or her constitute insufficient medical evidence to determine whether the claimant is disabled. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) (citation omitted); *see also* 20 C.F.R. § 404.1519a(a)(1) ("The decision to purchase a consultative examination . . . will be made after we have given full consideration to whether the additional information needed is readily available from the records of your medical sources."). Furthermore, 20 C.F.R. § 404.1519a(b) provides that "[a] consultative examination may be purchased when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on . . . [the] claim." *Id*. For example, a consultative examination should be purchased when "[t]he additional evidence needed is not contained in the records of your medical sources." 20 C.F.R. § 404.1519a(b)(1).

In his decision, the ALJ addresses the pertinent medical evidence, but offers no explanation or discussion as to how his RFC determination relates to the addressed medical evidence. More significantly, the ALJ's decision lacks discussion of any opinions from treating or examining physicians, or even non-examining physicians regarding Greenwood's ability to function in the workplace. *See Lewis*, 353 F.3d at 646; *Krogmeier*, 249 F.3d at 1023. In fact, the administrative record completely lacks any opinion from a treating or examining source regarding Greenwood's functional capabilities. Moreover, the ALJ acknowledges that there is no treating source opinion, and therefore, he gives "great weight" to the state agency non-examining physician opinions. Even though the ALJ gives "great weight" to the opinions of the state agency non-examining physicians, he inexplicably fails to actually discuss any of those opinions in his decision. Therefore, having reviewed the entire record, the Court finds that the ALJ failed to fully and fairly develop the record with regard to Greenwood's RFC.

Because the record lacks any opinions from Greenwood's treating physicians or from a consultative examining physician regarding Greenwood's functional capabilities, the Court finds that "a crucial issue is undeveloped."[12] *See Stormo*, 377 F.3d at 806. Accordingly, the Court determines that remand is necessary so that the ALJ may obtain information from Greenwood's treating physicians regarding his functional capabilities in the workplace. If after recontacting Greenwood's doctors, further examination is necessary to provide a complete record on the issue of Greenwood's workplace functional

---

[12] While the Court recognizes that an ALJ has an obligation to fully and fairly develop the record, including seeking clarifying statements from a treating physician when a "crucial" issue is undeveloped, and/or ordering a consultative examination when the evidence is not sufficient to support a decision, the irony is not lost on the Court when a claimant represented by counsel complains that the ALJ failed to obtain such information, even though he could have obtained, and should have obtained the information from his treating physicians himself. Nevertheless, in this particular case, the Court finds that ALJ did not meet his obligation, and remand is appropriate for further development of the record.

capabilities, then a consultative examination should be ordered. *See Barrett*, 38 F.3d at 1023. On remand, the ALJ must also reconsider Greenwood's RFC in light of the information provided by Greenwood's treating physicians or the results of a consultative evaluation. *See Guilliams*, 393 F.3d at 803.

## 2. *Credibility Determination*

Greenwood argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Greenwood maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Greenwood's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The absence of objective medical evidence to support a claimant's subjective complaints is also a relevant factor for an ALJ to consider. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (citation omitted). The ALJ, however, may not disregard a claimant's subjective complaints "solely because the objective medical evidence does not fully support them." *Polaski*, 739 F.2d at 1322; *see also Dukes v. Barnhart*, 436 F.3d 923, 928 (8th Cir. 2006) ("In discrediting subjective claims, the ALJ cannot simply invoke *Polaski* or discredit the claim because they are not fully supported by medical evidence.").

Instead, "'[a]n ALJ may discount a claimant's subjective complaints only if there are inconsistencies in the record as a whole.'" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997)); *see also Lowe*

*v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'" *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)); *see also Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998) ("When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, must detail reasons for discrediting the testimony, must set forth inconsistencies, and must discuss the *Polaski* factors."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Guilliams*, 393 F.3d at 801 (explaining that deference to an ALJ's credibility determination is warranted if the determination is supported by good reasons and substantial evidence); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Wagner*, 499 F.3d at 851 (quoting *Pearsall*, 274 F.3d at 1218).

In his decision, the ALJ properly set forth the law for making a credibility determination under *Polaski* and the Social Security Regulations.[13] The ALJ concluded that the medical evidence and Greenwood's preference for over-the-counter pain relievers, instead of prescription pain relief medicine, made his allegations of pain and disability

---

[13] *See* Administrative Record at 17-18.

"less than credible."[14]  However, in the same paragraph determining Greenwood's credibility, the ALJ also states:

> The chroncity of [Greenwood's] left shoulder complaints well-supported based on the medical and treatment record and [Greenwood] is credible to the extent that he would experience functional limitations with use of the left upper extremity. However, much of the treatment record substantiated exacerbation of pain in conjunction with arduous activities involving the left upper extremity.

(Administrative Record at 18.) First, because these two sentences are poorly written, it is unclear to the Court how they support the ALJ's determination that Greenwood is "less than credible." Moreover, contrary to the ALJ's conclusion, these sentences appear to say that Greenwood is credible as to his allegations of pain and functional limitations with his left shoulder, and that his pain and limitations are exacerbated by actively using his left shoulder. The Court finds the ALJ's minimal discussion of Greenwood's credibility to be unclear, and his conclusion to be inconsistent with his discussion of Greenwood's testimony.

Furthermore, while the ALJ's decision provides a thorough discussion of Greenwood's medical records, the ALJ fails to address how or why the medical evidence supports his conclusion that the evidence is "inconsistent" with Greenwood's allegations of pain and disability. Therefore, Court finds that the ALJ has failed in his duty to make an express credibility determination, detailing the reasons for discrediting the testimony, and setting forth inconsistencies in the record. *Baker*, 159 F.3d at 1144; *see also Ford*, 518 F.3d at 982 (When making a credibility determination, an ALJ is required to "'detail the reasons for discrediting the testimony and set forth the inconsistencies found.'") (Quotation omitted). Additionally, the ALJ provides little discussion of the *Polaski* factors. Because the ALJ's decision lacks any explanation or discussion of the alleged inconsistencies between Greenwood's testimony and the medical evidence, or full

---

[14] *Id.* at 18-19.

consideration of the *Polaski* factors, the Court determines that remand is appropriate for the ALJ to further develop the record with regard to Greenwood's credibility. Therefore, on remand, the ALJ shall set forth in detail his reasons for finding Greenwood's subjective allegations to be credible or not credible. If on remand, the ALJ finds Greenwood's testimony not to be credible, the ALJ shall fully explain the reasons for his credibility determination and fully explain the inconsistencies between Greenwood's subjective allegations and the evidence in the record.

## C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to fully and fairly develop the record with regard to Greenwood's RFC, and make a proper credibility determination in this matter. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ shall fully and fairly develop the record with regard to Greenwood's RFC. Specifically, for purposes of the RFC determination, the ALJ should recontact Greenwood's treating physicians to gather information regarding his functional abilities in the workplace. If after recontacting his doctors, further examination is necessary to provide a complete record on the issue of Greenwood's functional capabilities, then a consultative examination should be ordered. The ALJ must also reconsider Greenwood's RFC in light of the information provided by Greenwood's treating physicians or the results of a consultative evaluation. Lastly, the ALJ is instructed to make a proper credibility determination in accordance with the requirements set forth in *Polaski* and explain his reasons for crediting or discrediting Greenwood's allegations.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 29th day of September, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA